**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**MARIANNE HENMAN,**

        **Plaintiff,**                          **CIVIL ACTION NO. 18-cv-10940**

        **v.**                                  **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**              **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Marianne Henman seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 15).  Plaintiff has also filed an answer and brief in response to Defendant's Motion for Summary Judgment.  (Docket no. 16.)  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on March 12, 2015, alleging that she has been disabled since January 6, 2015, due to shoulder surgery, bilateral shoulder pain, a broken vertebra in her neck, and numbness. (TR 11, 85-86, 185-97, 210.) The Social Security Administration denied Plaintiff's claims on August 4, 2015, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ). (TR 59-86, 123-28.) On February 7, 2017, Plaintiff appeared with a representative and testified at a hearing before ALJ Paul W. Jones. (TR 26-58.) The ALJ subsequently issued an unfavorable decision on March 10, 2017, and the Appeals Council declined to review the ALJ's decision. (TR 1-6, 11-20.) Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 11 at 6-9) and the ALJ (TR 13-18) have set forth detailed, factual summaries of Plaintiff's medical record; the ALJ also summarized the hearing testimony (TR 17, 19). Defendant incorporates by reference the ALJ's recitation of the facts into her brief. (Docket no. 15 at 4.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 6, 2015, and that Plaintiff suffered from the following severe impairments: C6 fracture, bilateral shoulder status post arthroplasties, seizure disorder, depression, anxiety, and alcohol abuse. (TR 13-15.) Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15-16.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs, stoop, kneel, crouch, and crawl; with no exposure to hazards; occasional exposure to vibration; in simple, routine, repetitive work; with occasional changes in the work setting.

(TR 16-18.) Subsequently, in reliance on a vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 19.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 6, 2015, through the date of the decision. (TR 11, 19-20.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to

3

support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

> (4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and

5

a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ erred by failing to include any restrictions on Plaintiff's use of her upper extremities in his assessment of Plaintiff's RFC; and (2) the ALJ erred in assigning only little weight to the opinion of Plaintiff's treating physician, Randy Bell, M.D. (Docket no. 11 at 10-15.) The undersigned will address Plaintiff's arguments in reverse order.

### 1.  *The ALJ's Assessment of Dr. Bell's Opinion*

It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the

Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Dr. Bell completed a Physical Medical Source Statement regarding Plaintiff's impairments on February 1, 2017. (TR 1202-05.) In this Statement, Dr. Bell opined that Plaintiff could sit for one hour at a time, stand for one hour at a time, sit for about two hours total in an eight-hour workday, stand/walk for about two hours total in an eight-hour workday, and that she would need

7

a job that permits shifting positions at will. He also opined that Plaintiff would need to take unscheduled ten- to fifteen-minute breaks as needed, but potentially every hour, during a working day. According to Dr. Bell, Plaintiff could lift less than ten pounds occasionally and ten to twenty pounds rarely but never fifty pounds, and she could occasionally twist, stoop, crouch/squat, and climb stairs occasionally but never climb ladders. Dr. Bell further opined that Plaintiff has significant limitations with reaching in that she could only use her arms to reach in front of her body five percent of the time and to reach overhead less than five percent of the time in an eight-hour workday. Dr. Bell concluded that Plaintiff's symptoms and functional limitations would cause her to miss more than four days of work per month.

> The ALJ summarized and assessed Dr. Bell's opinion as follows:
>
> In February 2017, Randy Bell M.D., claimant's primary care physician, gave claimant work preclusive limitations, including missing more than four days per month of work, sitting for about 2 hours in an 8-hour workday, standing/walking 2 hours in an 8 hour work day, and needing unscheduled breaks (Exhibit 18F). This opinion is not consistent with or supported by the medical reports. Clinicians reported that claimant had normal gait, station, and motor strength and sensation in bilateral lower extremities. Therefore, I give this opinion little weight.

(TR 18.)

Plaintiff argues that the ALJ provides no citation to the record to support his finding that Dr. Bell's opinion is not consistent with or supported by the medical reports. (Docket no. 11 at 13-14.) She also argues that "the ALJ's reasoning is hardly persuasive given that many of Plaintiff's problems stem from her cervical spine and shoulders, thus her functioning is abnormal in her upper extremities." (*Id*. at 14 (emphasis in original).) Plaintiff argues that interestingly, the ALJ never addressed Dr. Bell's opinion regarding Plaintiff's ability to use her upper extremities or Plaintiff's capacity for lifting objects. (*Id*.) Plaintiff then cites several medical records in support of Dr. Bell's opinion. (*Id*. at 14-15.)

8

Plaintiff's arguments fail, for a couple of reasons. First, there is no legal requirement that an ALJ explicitly recite and discuss each and every aspect of a treating physician's opinion in his decision. Indeed, "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Here, the ALJ's characterization of Dr. Bell's opinion – that Dr. Bell gave Plaintiff "*work preclusive limitations*, *including*, . . ." – demonstrates that the ALJ considered Dr. Bell's opinion in its entirety, in accordance with the regulations.

Moreover, as Defendant points out, in the paragraph immediately following the ALJ's assessment of Dr. Bell's opinion, the ALJ cites medical records that support his reasoning for discounting Dr. Bell's opinion. For example, the ALJ pointed out that in March 2015, x-rays of Plaintiff's right shoulder revealed a satisfactory appearing total shoulder arthroplasty. (TR 18 (citing TR 314).) The ALJ also discussed a July 2016 treatment record from Dr. Hobson, who noted that Plaintiff had full motor strength in her upper and lower extremities; 2+ and symmetric reflexes in her upper and lower extremities; normal heel, toe, and tandem walking; negative Romberg; and intact sensation to light touch and vibration distally. (TR 18 (citing TR 720-30).) And in the paragraph immediately preceding his discussion of the opinion evidence, the ALJ cited Plaintiff's physical therapist's December 2015 note that Plaintiff was doing exceptionally well, tolerated treatment well, had minimal to no stiffness in her shoulder, and that her progress was very good. (TR 17.) He also cited Plaintiff's report that she could complete all her activities of daily living with less pain or discomfort ninety percent of the time and the fact that Plaintiff

reported no pain or discomfort during her medication reviews in November and December 2016.[1] (TR 17.)

Plaintiff argues that there is nothing in the paragraph of evidence cited by the ALJ immediately after his assessment of Dr. Bell's opinion, like the phrases "for example" or "as discussed further below," that clearly indicates that it was meant to support that assessment; Plaintiff suggests that the paragraph appears to only be an overall summary of the evidence. (Docket no. 16 at 6.) Plaintiff's argument places form over substance. An ALJ's explanation must be viewed against the backdrop of his discussion of the treating records. *Fifer v. Comm'r of Soc. Sec.*, No. 14-14584, 2016 WL 1399254, at *2 (E.D. Mich. Apr. 11, 2016). And here, when the ALJ's assessment of Dr. Bell's opinion is read in conjunction with the ALJ's discussion of the medical evidence noted above, the ALJ's reasons for discounting Dr. Bell's opinion are sufficiently specific to make clear to any subsequent reviewers the weight that the ALJ gave to Dr. Bell's opinion, and they therefore constitute good reasons under the regulations. The ALJ has sufficiently complied with the procedural aspect of the treating physician rule. Accordingly, Plaintiff's Motion should be denied with regard to the ALJ's assessment of Dr. Bell's opinion.

    2.    *The ALJ's RFC Assessment*

Plaintiff argues that the ALJ erred by not including any restrictions on Plaintiff's upper extremities in his assessment of Plaintiff's RFC. (Docket no. 11 at 10-13.) In support of this argument, Plaintiff recites several medical records and then argues that despite this evidence, the ALJ "never puts any restrictions in his RFC analysis regarding [Plaintiff's] ability to use her upper

---

[1] The ALJ also cited an October 2016 treatment note that Plaintiff had normal muscle strength, tone, gait, and station. (TR 18.) As Plaintiff points out, however, this note was taken when Plaintiff was sedated, non-responsive, and on a ventilator in the hospital due to multiple seizures. (Docket no. 16 at 5-6 (citing TR 738-41).) Additionally, the note stated in contradictory fashion that Plaintiff's strength could not be tested. *See id.* To the extent the ALJ's citation to this record is erroneous, it does not warrant remand in light of the other evidence cited by the ALJ.

extremities." (*Id*. at 10-11 (emphasis in original).) This is not true. The ALJ limited Plaintiff to "light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (TR 16.) These regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). The regulations further provide that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. Thus, by limiting Plaintiff to light work, the ALJ limited Plaintiff's ability to lift, carry, push, and pull with her upper extremities. The ALJ also determined that Plaintiff could never climb ladders, ropes, or scaffolds, further limiting Plaintiff's ability to use her upper extremities. Plaintiff's argument therefore fails in this regard.

As noted in the preceding section above, the ALJ cited several treatment records that support his RFC determination regarding Plaintiff's ability to use her upper extremities. Plaintiff acknowledges that the ALJ cited some of these records, but she argues that he did so improperly. For example, Plaintiff argues that while the ALJ cited her physical therapist's note that Plaintiff was doing much better after physical therapy, he did not acknowledge her hearing testimony regarding that note. (Docket no. 11 at 12.) Indeed, the ALJ and Plaintiff had the following exchange at the hearing:

> Q     Page 160 of 10-F – let me get to it. I wrote a note about it. There's a discharge note from December of 2015, a discharge from – hospital records, Henry Ford Hospital it looks like. The patient is doing exceptionally well, patient tolerated treatment well, pain level with rest 1 of 10 and with exercise is 2 of 10. The patient ha[s] minimal to no stiffness with shoulder. Patient is doing exceptionally well and her progress is very good. Patient states she can complete all her ADL's, activities of daily living, with less pain or discomfort 90 percent of the time. I think what they're talking about here is probably your shoulders?
>
> A     Uh-huh, yes.
>
> Q     Does that sounds like you in December of 2015?

> A  That doesn't.  There was more pain than what they described there.
>
> Q  Those pain levels – either they got them from the sky or they got them from you.
>
> A  It was on a day-to-day basis.

(TR 49-50.)  Plaintiff is correct that the ALJ did not recite this portion of the hearing testimony in his decision, but it does not mean that he did not consider it.  *See Kornecky, supra*.  To the contrary, it is axiomatic that the ALJ considered all of Plaintiff's hearing testimony, as he is the ALJ that presided over the administrative hearing.  Furthermore, as is evident from the above exchange, and as the ALJ explicitly stated in his decision, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and the other record evidence.  (TR 17.)

Plaintiff further argues that the ALJ's reliance on the fact that Plaintiff reported no pain or discomfort during her medication reviews in November and December 2016 is "hardly persuasive given those were appointments with her psychiatrist."  (Docket no. 11 at 12 (emphasis in original).)  As Defendant points out, however, the portions of Plaintiff's medication review records at issue specifically relate to Plaintiff's physical condition.  (*See* docket no. 15 at 12 (citing TR 457, 462).)  Defendant argues that when viewed in context, the ALJ was not required to ignore Plaintiff's reported lack of pain or discomfort just because it was made in the context of mental health treatment.  (*Id.*)  Defendant's argument holds merit.

Plaintiff also takes issue with the following statement made by the ALJ:  "Claimant testified she only takes Gabapentin for pain, which is not indicative of someone in debilitating pain."  (TR 18.)  Plaintiff argues that this was a medical judgment that the ALJ was not qualified to make, relying on *Meece v. Barnhart*, 192 F. App'x 456 (6th Cir. 2006).  (Docket no. 11 at 12.)

In *Meece*, the ALJ discounted the extent of the claimant's headache pain because his doctors failed to prescribe certain medications. *Meece*, 192 F. App'x at 465. The court found that that was not a legitimate basis for an adverse credibility determination, reasoning that the decision of which pain medication should have been prescribed to the claimant was beyond the expertise of the ALJ. *Id*. The ALJ's statement in this case does not amount to the error made by the ALJ in *Meece*. Plaintiff has not demonstrated reversible error here.

As previously noted, Plaintiff cites a slew of record evidence in support of her argument regarding her upper extremities, in an effort to show that the ALJ's RFC determination is not supported by substantial evidence. (Docket no. 11 at 10-11; docket no. 16 at 7.) But it is not the court's role to resolve conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). The evidence cited by Plaintiff, most of which the ALJ explicitly considered, does tend to support Plaintiff's assertions, but the ALJ also cited substantial evidence in support of his decision. At most, Plaintiff has shown that the ALJ's decision falls within the ALJ's zone of choice. *See Mullen*, 800 F.2d at 545 (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). And if the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if substantial evidence also supports the opposite conclusion. *Her*, 203 F.3d at 389-90. Thus, the ALJ's RFC determination should not be disturbed.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 11) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 15).

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 8, 2019        s/ Mona K. Majzoub
                           MONA K. MAJZOUB
                           UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  July 8, 2019          s/ S. Osorio
                                           Acting Case Manager